**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

|                              |   |                          |
|------------------------------|---|--------------------------|
|                              | : |                          |
| NANCY E.,                    | : |                          |
|                              | : |                          |
|   plaintiff,                 | : |                          |
|                              | : |                          |
| v.                           | : | Civil No. 3:24-cv-1813-RAR |
|                              | : |                          |
| COMMISSIONER OF SOCIAL       | : |                          |
| SECURITY,                    | : |                          |
|                              | : |                          |
|   defendant.                 | : |                          |

### RULING ON PENDING MOTIONS

Nancy E. ("plaintiff") appeals the final decision of the Commissioner of Social Security ("the Commissioner" or "defendant") pursuant to 42 U.S.C. § 405(g). The Commissioner denied plaintiff's application for Social Security Disability Benefits in a decision dated January 31, 2024. Plaintiff timely appealed to this Court.

Currently pending are plaintiff's motion for an order reversing or remanding his case (Dkt. #19) and defendant's motion to affirm the decision of the Commissioner. (Dkt. #24.)

For the following reasons, the plaintiff's motion to remand or reverse is DENIED and the Commissioner's motion to affirm is GRANTED.

### PROCEDURAL HISTORY

Plaintiff initially filed for disability insurance benefits under Title II and Supplemental Insurance benefits under Title

1

XVI on February 11, 2020. (R. 190.)  Plaintiff's claims were initially denied on May 4, 2020, and upon reconsideration on September 1, 2020. (R. 190.)  Thereafter, plaintiff filed a written request for a hearing and Administrative Law Judge Edward Malvey held two hearings on January 27, 2021, and April 9, 2021. (R. 57-.)  After the hearings, ALJ Malvey issued a written decision denying plaintiff's application on May 10, 2021. (R. 190-97.) Plaintiff thereafter sought review by the Appeals Council, which then remanded the matter back to a new ALJ on November 1, 2022. (R. 202-05.)

Upon remand, ALJ Kuperstein (hereinafter "ALJ") held two additional hearings, on July 10th and October 13th of 2023. (R. 42-55 and 88-147.)  After the hearings, ALJ Kuperstein issued a written decision denying plaintiff's application on January 31, 2024. (R. 10-27.) Plaintiff thereafter sought review by the Appeals Council, which was denied on October 29, 2024. (R. 1-6.) Plaintiff then timely filed this action seeking judicial review. (Dkt. #1.)

**STANDARD OF REVIEW**

"A district court reviewing a final . . . decision [of the Commissioner of Social Security] pursuant to section 205(g) of the Social Security Act, 42 U.S.C § 405(g), is performing an appellate function." Zambrana v. Califano, 651 F.2d 842, 844 (2d

Cir. 1981).[1] "The findings of the Commissioner of Social Security
as to any fact, if supported by substantial evidence, [are]
conclusive . . . ." 42 U.S.C. § 405(g). Accordingly, the Court
may not make a de novo determination of whether a claimant is
disabled in reviewing a denial of disability benefits. Id.;
Wagner v. Sec'y of Health and Human Servs., 906 F.2d 856, 860
(2d Cir. 1990). Rather, the Court's function is to ascertain
whether the Commissioner applied the correct legal principles in
reaching his conclusion, and whether the decision is supported
by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 985 (2d
Cir. 1987).

Therefore, absent legal error, this Court may not set aside
the decision of the Commissioner if it is supported by
substantial evidence. Berry v. Schweiker, 675 F.2d 464, 467 (2d
Cir. 1982). Further, if the Commissioner's decision is supported
by substantial evidence, that decision will be sustained, even
where there may also be substantial evidence to support the
plaintiff's contrary position. Schauer v. Schweiker, 675 F.2d
55, 57 (2d Cir. 1982).

The Second Circuit has defined substantial evidence as
"'such relevant evidence as a reasonable mind might accept as
adequate to support a conclusion.'" Williams on Behalf of

---

[1]Unless otherwise indicated, when quoting cases, all internal quotation
marks, alterations, emphases, footnotes, and citations are omitted.

Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988) (quoting

Richardson v. Perales, 402 U.S. 389, 401 (1971)). Substantial

evidence must be "more than a scintilla or touch of proof here

and there in the record." Williams, 859 F.2d at 258.

The Social Security Act ("SSA") provides that benefits are

payable to individuals who have a disability. 42 U.S.C. §

423(a)(1). "The term 'disability' means . . . [an] inability to

engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment. . .." 42

U.S.C. § 423(d)(1). To determine whether a claimant is disabled

within the meaning of the SSA, the Administrative Law Judge

("ALJ") must follow a five-step evaluation process as

promulgated by the Commissioner.[2]

---

[2] The five steps are as follows: (1) the Commissioner considers whether
the claimant is currently engaged in substantial gainful activity; (2)
if not, the Commissioner considers whether the claimant has a "severe
impairment" which limits his or her mental or physical ability to do
basic work activities; (3) if the claimant has a "severe impairment,"
the Commissioner must ask whether, based solely on the medical
evidence, the claimant has an impairment listed in Appendix 1 of the
regulations. If the claimant has one of these enumerated impairments,
the Commissioner will automatically consider him or her disabled
without considering vocational factors such as age, education, and
work experience; (4) if the impairment is not "listed" in the
regulations, the Commissioner then asks whether, despite the
claimant's severe impairment, he or she has the residual functional
capacity to perform his or her past work; and (5) if the claimant is
unable to perform his or her past work, the Commissioner then
determines whether there is other work which the claimant could
perform. The Commissioner bears the burden of proof on this last step,
while the claimant has the burden on the first four steps. 20 C.F.R. §
416.920(a)(4)(i)-(v).

To be considered disabled, an individual's impairment must be "of such severity that [s]he is not only unable to do h[er] previous work but cannot . . . engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). "[W]ork which exists in the national economy means work which exists in significant numbers either in the region where such individual lives or in several regions of the country." Id.[3]

## THE ALJ'S DECISION

Applying the five-step framework, the ALJ found at step one that plaintiff had not engaged in any substantial gainful activity since September 28, 2019. (R. 13.) At step two, the ALJ found that plaintiff had one severe impairment: psychogenic nonepileptic seizures. (R. 14.) In addition, the ALJ found that the plaintiff had the following non-severe impairments: "migraines, degenerative disc disease of the lumbar spine, asthma, kidney stones, gastroesophageal reflux disease (GERD), depressive disorder, post-traumatic stress disorder (PTSD) and anxiety disorder." (R. 14.)

At step three, the ALJ determined that plaintiff had no impairments or combination of impairments equal to a Listing. The

---

[3] The determination of whether such work exists in the national economy is made without regard to 1) "whether such work exists in the immediate area in which [the claimant] lives;" 2) "whether a specific job vacancy exists for [the claimant];" or 3) "whether [the claimant] would be hired if he applied for work." Id.

ALJ concluded that plaintiff did not meet or medically equal

Listing 11.02. (R. 19.)  The ALJ reached this conclusion by

finding that the plaintiff

> does not have a generalized tonic-clonic seizures,
> occurring at least once a month for at least three
> consecutive months despite adherence to prescribed
> treatment; or dyscognitive seizures, occurring at least
> once a week for at least three consecutive months despite
> adherence to prescribed treatment; or generalized tonic-
> clinic seizures, occurring at least once every two
> months for a at least four consecutive months despite
> adherence to prescribed treatment; or dyscognitive
> seizures occurring at least once every two weeks for at
> least three consecutive months despite adherence to
> prescribed treatment.

 (R. 19.)

Next, the ALJ determined that plaintiff had the residual

functional capacity ("RFC") to

> perform a full range of work at all exertional levels
> but with the following nonexertional limitations: The
> claimant is limited to no climbing of ladders, ropes, or
> scaffolds; to no exposure to hazards such as proximity
> to moving mechanical parts, exposure to electrical
> shock, working in high exposed places, exposure to
> radiation, or working with explosives as these types of
> environmental limitations are defined in the selected
> characteristics of the Dictionary of Occupational
> Titles.

(R. 19.)  At step four, the ALJ concluded that plaintiff could

perform her past relevant work as a receptionist or medical

assistant. (R. 25.)

Upon the completion of the five-step sequential evaluation

process, the ALJ determined that the plaintiff was not under a

disability from September 28, 2019 through the date of the
decision. (R. 27.)

## DISCUSSION

Plaintiff[4], appearing *pro se* in this matter, generally
argues that the ALJ erred by failing to properly acknowledge the
plaintiff's issues in public places, worsening migraines, and
back pain and discomfort. (Dkt. #19-1 at 1.)  Plaintiff asks
this Court to vacate the decision and remand the case for a
hearing before a new ALJ.

The Commissioner responds to the claims of error by arguing
that the ALJ properly discussed all of plaintiff's impairments
during the evaluation process and provided sufficient reasons,
supported by substantial evidence, for his findings. (Dkt. #24-1
at 2.)  Therefore, according to the Commissioner, while the
plaintiff might not agree with the final RFC determination, it
was not erroneous and was supported by substantial evidence.
(Dkt. #24-1 at 6-20.)

The Court notes that the ALJ in this matter determined that
plaintiff's migraines, degenerative disc disease, and mental

---

[4] A review of the docket in this matter indicates that the original
scheduling order was docketed on 1/16/25, however, it was not sent to
plaintiff via mail.  For this reason, the Court, *sua sponte,* posted a
new scheduling order informing plaintiff of the date her motion would
be due and that the brief should focus on informing the Court of the
relevant and controlling legal authority and applying it to the facts
of this case.  The *pro se* plaintiff has provided the Court with a
motion to remand that consists of one paragraph and generally outlines
her disagreement with the ALJ's findings.

health condition were non-severe impairments.  That being the
case, the Court construes plaintiff's brief to argue that the
ALJ did not properly evaluate those conditions at Step Two of
the sequential evaluation process.  The Court also construes
plaintiff as arguing that the ALJ's RFC determination is not
supported by substantial evidence.

A.    **The ALJ Did Not Err at Step Two of the Evaluation**

"A claimant has the burden of establishing that she has a
'severe impairment,' which is 'any impairment or combination of
impairments which significantly limits [her] physical or mental
ability to do basic work.'" Woodmancy v. Colvin, 577 Fed. Appx.
72, 74 (2d Cir. 2014)(quoting 20 C.F.R. § 416.920(c))
(alterations in original).  A mere diagnosis of a disease or
impairment is insufficient, the evidence must demonstrate that
such impairment is severe.  See Rivers v. Astrue, 280 Fed. Appx.
20, 22 (2d Cir. 2008).  "Accordingly, a claimant cannot satisfy
his light burden to show the severity of an impairment by simply
pointing to complaints of pain, a diagnosis, or treatment."
Duane N. v. Comm'r of Soc. Sec., No. 3:22-CV-65 (SVN), 2023 WL
2365991, at *4 (D. Conn. March 6, 2023)(citing Howard v. Comm'r
of Soc. Sec., 203 F. Supp. 3d 282, 296 (W.D.N.Y. 2016)).

A claimant seeking social security benefits must bear the
burden of showing that she has a medically severe impairment or
combination of impairments.  See Bowen v. Yuckert, 482 U.S. 137,

8

146 n.5 (1987).  "The severity regulation requires the claimant to show that [s]he has an 'impairment or combination of impairments which significantly limits' 'the abilities and aptitudes necessary to do most jobs.'" Id. at 146 (quoting 20 C.F.R. §§ 404.1520(c), 404.1521(b)).  It is the plaintiff's burden to provide "medical evidence which demonstrates the severity of her condition." Merancy v. Astrue, No. 3:10-cv-1982(WIG), 2012 WL 3727262, at *7 (D. Conn. May 3, 2012). Furthermore, Plaintiff must establish disability between her alleged onset date and her date of last insured. Monette v. Colvin, 654 Fed. Appx. 516, 517 n.1 (2d Cir. 2016).

"A lack of supporting evidence on a matter for which the claimant bears the burden of proof, particularly when coupled with other inconsistent record evidence, can constitute substantial evidence supporting a denial of benefits." Eusepi v. Colvin, 595 Fed. Appx. 7, 8 (2d Cir. 2014) (citing Talavera v. Astrue, 697 F.3d 145, 153 (2d Cir. 2012)).

Additionally, where an ALJ errs in determining an impairment is non-severe, the error is harmless when the ALJ finds other severe impairments and continues with the analysis. See O'Connell v. Colvin, 558 Fed. Appx. 63, 65 (2d Cir. 2014); Reices-Colon v. Astrue, 523 Fed. Appx. 796, 798 (2d Cir. 2013); Stanton v. Astrue, 370 Fed. Appx. 231, 233 n.1 (2d Cir. 2010). "At step two, if the ALJ finds an impairment is severe, 'the

9

question whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence.'" Lumpkin v. Saul, No. 3:19-CV-01159 (WIG), 2020 WL 897305, at *3 (D. Conn. Feb. 25, 2020)(citing Pompa v. Comm'r of Soc. Sec., 73 Fed. Appx. 801, 803 (6th Cir. 2003).) *See also*, Duane N. v. Comm'r of Soc. Sec., No. 3:22-CV-65 (SVN), 2023 WL 2365991, at *6 (D. Conn. March 6, 2023)(collecting cases)(articulating that "courts in this circuit have found a step two error harmless when the ALJ finds other severe impairments, proceeds through the remaining steps of the disability analysis, and considers the impact of the non-severe impairment in those steps, particularly when calculating the claimant's RFC.").

In this matter, plaintiff appears to argue that the ALJ did not properly evaluate her back pain, migraines, or mental health condition. (Dkt. #19-1 at 1.) The Court does not agree.

### a. Degenerative Disc Disease

As to plaintiff's back pain and degenerative disc disease, the ALJ concluded that the condition was non-severe. (R. 14.) In reaching this conclusion the ALJ noted an x-ray from 2018 which was normal. (R. 16, citing 3406.) Further the ALJ considered the 2022 MRI results showing that the lumbar spine had mild lumbar spondylosis with mild bilateral neural foraminal narrowing at L5-S1 and no significant spinal canal stenosis. (R. 16, citing 3409.) Following the reference to some further

testing, the ALJ concluded that "the diagnostic imaging and
clinical findings support that this condition is nonsevere." (R.
16.)

Further and directly to the plaintiff's assertion that she
"can't sit or stand for more than 30 minutes at a time with
[her] herniated disc." (Dkt. #19-1 at 1.) The ALJ, while
discussing the RFC findings and the evaluation of the medical
evidence, highlights that the independent medical expert stated
that the plaintiff had a very mild back problem. (R. 21.) A
review of the testimony indicates that the medical expert, Dr.
Todorov, reviewed the medical evidence in the record and stated
that his "overall impression" was that the back issue is a
fairly mild problem and the plaintiff was taking 800 milligrams
of Motrin for pain. (R. 106-07.) The opinion of Dr. Todorov,
which was found persuasive, as well as those of the state agency
medical consultants, were found to be generally persuasive. (R.
22-23.) The ALJ noted that all of these opinions found that the
plaintiff had no severe medically determinable physical
impairments based on the information available to those doctors
at the time of their evaluations. (R. 106, 155, 165, 174, 183.)

### b. Migraines

The ALJ, likewise, concluded that plaintiff's migraines
were a non-severe impairment. The Court finds that this
determination is supported by substantial evidence. As the ALJ

11

discussed, the above referenced medical expert, Dr. Todorov determined that while plaintiff suffered from migraine headaches, and he would treat a patient based on self-reports, that the record indicates that plaintiff was having success with prescriptions. (R. 14-15.)  Further, the ALJ noted records from 2019 stating that the migraines were controlled, and from 2022 stating that she was stable and doing well with infrequent headaches and showed marked improvement.  (R. 15, citing 1065, 3426, 3429, 3430.)

As with the back pain issue, the record reflects that at both Step Two and in formulation of the RFC, the ALJ sufficiently considered plaintiff's migraines and relied on opinion and medical evidence to determine that it was not a severe impairment.

### c. Mental Health Condition

Plaintiff also asserts that the ALJ did not take into account her challenges related to her mental health and her difficulty appearing in public places.

In finding plaintiff's depressive disorder, PTSD, and anxiety disorder non-severe, the ALJ noted a variety of evidence from the record.  First, the ALJ noted some self-reported activities related to going out in public to the mall, taking public transportation to go shopping, and walking in the park with family. (R. 16.)  The ALJ continued by noting that medical

12

treatment notes and psychiatric examinations showed unremarkable findings and normal attention, orientation, intact memory, cooperative behavior, and good impulse control. (R. 17.) Further, there have been normal examinations since 2022. (R. 17.)

Additionally, the ALJ evaluated plaintiff according to the functional areas of mental functions found in the regulations. (R. 18.)  The ALJ found, with record support, that plaintiff had a mild limitation in all four areas. (R. 19, citing R. 1389, 1441-42, 1449, 1779, 1830, 1864, 2718, 2724, 2940, 2950, 2956, 2967, and 2976.)

The ALJ properly evaluated the plaintiff's mental health conditions and cited to a variety of evidence in the record to support the step two determination that the conditions were non-severe.

The Court has determined that the ALJ did not err at step two.  However, the Court also notes that if any such error was present, it would be harmless, as the ALJ considered all of the plaintiff's conditions regardless of severity in formulating an RFC.

**B. The ALJ's RFC is Supported by Substantial Evidence**

Having determined that there was sufficient evaluation of plaintiff's medical conditions that were found to be non-severe, the Court next turns to whether the ALJ properly supported the

13

RFC determination with substantial evidence.

When an individual's impairment does not meet or equal a listed impairment, the ALJ makes "a finding [of the individual's] residual functional capacity based on all the relevant medical and other evidence in [the] case record." 20 C.F.R. § 404.1520(e). An individual's residual functional capacity ("RFC") is the most an individual can still do despite his or her limitations. 20 C.F.R. § 404.1545(a)(1). Plaintiff has the burden of establishing a diminished RFC. *See* Butts v. Barnhart, 388 F. 3d 377, 383 (2d Cir. 2004).

"An RFC finding is administrative in nature, not medical, and its determination is within the province of the ALJ, as the Commissioner's regulations make clear." Curry v. Comm'r of Soc. Sec., 855 Fed. Appx. 46, 48 (2d Cir. 2021). In resolving evidence, an ALJ is entitled to accept parts of a doctor's opinion and reject others. *See* Veino v. Barnhart, 312 F.3d 578, 588-89 (2d Cir. 2002). "If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld." McIntyre v. Colvin, 758 F.3d 146, 149 (2d Cir. 2014).

An ALJ is permitted to reject certain limitations and only "required to provide [a] rationale in the written decision sufficient to allow this Court to conduct an adequate review of h[is] findings.... It is not the function of this Court to speculate as to the evidence and legal standards on which the

ALJ based h[is] decision, nor to supply its own rationale where the ALJ's decision is lacking or unclear." Dittmar v. Comm'r of Soc. Sec., No. 1:16-CV-0404(CFH), 2017 WL 2333836, at *5(N.D.N.Y May 30, 2017).

However, when articulating the rationale for the RFC, the ALJ need not discuss every shred of record evidence; the Court need only be able to understand the ALJ's rationale based on the decision as a whole, read together with the evidence of record. Cichocki v. Astrue, 729 F.3d 172, 178 n.3 (2d Cir. 2013).

In the event that the court does not find that the RFC determination was legally erroneous, the issue will become one of substantial evidence. "[W]hether there is substantial evidence supporting the appellant's view is not the question here; rather, we must decide whether substantial evidence supports the ALJ's decision." Bonet v. Colvin, 523 Fed. Appx. 58, 59 (2d Cir. 2013) (summary order). Analogously, "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002).

As noted earlier, the ALJ determined that plaintiff had an RFC to

> Perform a full range of work at all exertional levels
> but with the following nonexertional limitations: The
> claimant is limited to no climbing of ladders, ropes, or
> scaffolds; to no exposure to hazards such as proximity
> to moving mechanical parts, exposure to electrical
> shock, working in high exposed places, exposure to
> radiation, or working with explosives as these types of

environmental limitations are defined in the selected
characteristics of the Dictionary of Occupational
Titles.

(R. 19.)

In reaching this conclusion, the ALJ considered the
plaintiff's testimony, medical evidence in the record, and
evaluated the persuasiveness of the medical opinions. (R. 19-
25.)  First, the ALJ outlined the testimony provided by
plaintiff and went through the symptoms that she complained of.
However, the ALJ then noted that the "intensity, persistence,
and functionally limiting effects of [plaintiff's] symptoms"
were not generally supported by the objective medical evidence
in the record (R. 20-21.)  In reaching this conclusion, the ALJ
referenced a number of medical records which show no seizures on
past EEG's and no evidence of acute intracranial abnormality.
(R. 21, citing R. 1741, 3226.)  The ALJ made further references
to medical records from 2022 highlighting plaintiff was negative
for seizures and tolerating medical without side effects. (R.
21, citing R. 1770, 1784.) The ALJ continued the evaluation of
the medical records and concluded that the examination records
and tests support working at all exertional levels, however,
with a limtition of "no climbing of ladders, ropes, or
scaffolds" and no exposure to other significant hazards. (R.
22.)

In evaluating the medical opinions in the records, the ALJ

16

determined the opinion of the medical expert was persuasive, and the opinions of the state agency consultants regarding both physical and mental health conditions were generally persuasive. As to all of these opinions the ALJ found that they were properly supported and consistent with the medical evidence of record. (R. 22-23.) The ALJ continued and found a March 2020 opinion from Dr. Wojcicki and LPC Harris had some persuasiveness. (R. 24.) The ALJ determined that this opinion indicated some reduced ability to use coping skills, handle frustration and persist in simple activities, and was generally in line with treatment notes showing unremarkable examination findings. (R. 24.)

Conversely, the ALJ considered a June 2023 opinion from Dr. Wojcicki that showed considerably more severe limitations. (R. 24-5.) However, the ALJ conclude that this opinion was of little persuasiveness given that Dr. Wojcicki's own treatment notes from that time period do not support such severe limitations and do not show significant worsening of plaintiff's condition. (R. 25.)

The Court is satisfied that the ALJ has sufficiently laid out the evaluation of the medical evidence and opinions for the Court. Having done so the Court does not find any legal error and has determined that the ALJ's RFC determination is supported by substantial evidence.

17

## CONCLUSION

For the foregoing reasons, plaintiff's motion to remand (Dkt. #19) is DENIED and the Commissioner's motion to affirm (Dkt. #24) is GRANTED.

This is not a recommended ruling. The consent of the parties allows this magistrate judge to direct the entry of a judgment of the district court in accordance with the Federal Rules of Civil Procedure. Appeals can be made directly to the appropriate United States Court of Appeals from this judgment. See 28 U.S.C. § 636(c)(3).

SO ORDERED this 12th day of March 2026, at Hartford, Connecticut.

_____/s/_____
Robert A. Richardson
United States Magistrate Judge
